UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 10-50082-JLV |
| | ) | |
| Plaintiff, | ) | ORDER DENYING |
| | ) | DEFENDANT'S MOTION |
| vs. | ) | FOR JUDGMENT OF |
| | ) | ACQUITTAL OR NEW TRIAL |
| LEO VILLARREAL, | ) | AND MOTION TO DISMISS |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

On June 23, 2011, a jury found defendant Leo Villarreal guilty of one count of aggravated sexual abuse and one count of sexual abuse. (Docket 92). Mr. Villarreal moves the court for a judgment of acquittal or, in the alternative, for a new trial on both counts and for dismissal of the count of aggravated sexual abuse. (Docket 101). The government resists the motion in its entirety. (Docket 115). This matter has been fully briefed and is ripe for resolution. See Dockets 102, 115, & 121. For the reasons set forth below, the court denies Mr. Villarreal's motion in its entirety.

## FACTUAL AND PROCEDURAL HISTORY

The court limits its recitation to those facts necessary to resolve the pending motion. In its discussion of the merits of the motion, the court shall provide additional facts as needed.

On August 17, 2010, the government indicted Mr. Villarreal on two counts of aggravated sexual abuse (Counts I and II) and one count of sexual abuse (Count III). (Docket 1). Count I of the indictment alleged as follows:

On or about March 10, 2010, at Manderson, in Indian country, in the District of South Dakota, the defendant, Leo Villarreal,[1] an Indian, did knowingly engage and attempt to engage in a sexual act, to-wit, contact between the penis and the vulva, by using force against [L.L.H.], all in violation of 18 U.S.C. §§ 2241(a)(1), 2246(2)(A) and 1153.

(Docket 1 at p. 1). Count II of the indictment alleged as follows:

On or about March 10, 2010, at Manderson, in Indian country, in the District of South Dakota, the defendant, Leo Villarreal, an Indian, did knowingly engage and attempt to engage in a sexual act, to-wit, the intentional touching, not through the clothing, of the genitalia of [L.L.H.], a person who had not attained the age of 16 years, with the intent to abuse, humiliate, harass, degrade and arouse and gratify the sexual desire of Leo Villarreal, by using force against [L.L.H.], all in violation of 18 U.S.C. §§ 2241(a)(1), 2246(2)(D) and 1153.

Id. at pp. 1-2. Finally, Count III of the indictment alleged as follows:

On or about March, 10, 2010, at Manderson, in Indian country, in the District of South Dakota, the defendant, Leo Villarreal, an Indian, did knowingly engage and attempt to engage in a sexual act with Marissa [Two Lance],[2] to-wit, penetration, however slight, of the genital opening by the finger, with the intent to abuse, humiliate, harass, degrade, arouse and gratify the sexual desire of Leo Villarreal, at a time when Marissa [Two Lance], was incapable of appraising the nature of the conduct and physically incapable of declining participation in, and communicating an unwillingness to engage in the sexual act, all in violation of 18 U.S.C. §§ 2242(2), 2246(2)(C) and 1153.

_____

[1]The indictment originally represented the defendant's last name as "Villareal." (Docket 1). On August 25, 2010, upon the government's unopposed motion, the court amended the indictment to reflect the correct spelling of defendant's last name, "Villarreal." (Docket 12).

[2]The indictment originally alleged the victim in Count III was Marissa Lone Hill. (Docket 1 at p. 2). On June 17, 2011, upon the government's unopposed motion, the court amended Count III of the indictment to reflect the correct name of the alleged victim, Marissa Two Lance. (Docket 66).

Id. at p. 2. Mr. Villarreal pled not guilty to the charges and proceeded to trial. (Docket 4).

A jury trial commenced on June 21, 2011. The court received testimony from various witnesses including L.L.H. and Marissa Two Lance. On June 23, 2011, the government rested its case-in-chief. (TT 337:21-23).[3] The court held a hearing outside the presence of the jury to hear any defense motions. (TT 337:24-25; 338:1-11). Counsel for Mr. Villarreal, Assistant Federal Public Defender Gary Colbath, moved for judgment of acquittal and/or to dismiss on all three counts. (TT 338:12-17). The court denied the motion with respect to all three counts. (TT 351:15-19; 355:1-3; 358:17-19). Mr. Villarreal then presented his case to the jury. (TT 360:22-25; 361:1-2).

After both sides rested, the court held a hearing outside the presence of the jury to settle the final jury instructions. (TT 402:17-22). During the hearing, Mr. Colbath renewed his motion for judgment of acquittal and/or motion to dismiss on all three counts. (TT 403:4-11). The court denied the motions without prejudice to renewal post-trial in the event of conviction. (TT 411:9-25; 412:1-25).

After the parties presented their closing arguments and the court read its final instructions to the jury, the jury deliberated on all three counts of the

_____

[3]The court shall refer to the transcript of Mr. Villarreal's trial as "TT" followed by the page number(s) and line number(s) where the cited information may be found. For example, the cite "TT 11:24-25; 12:1-3" refers to information found at page 11, lines 24-25, and page 12, lines 1-3.

indictment.  On June 23, 2011, the jury returned a verdict of not guilty on Count I and guilty on Counts II and III.  (Docket 92).

On August 1, 2011, Mr. Villarreal timely filed a motion for judgment of acquittal or, in the alternative, for a new trial on Counts II and III of the indictment and for dismissal of Count II of the indictment.  (Docket 101).  He moves for judgment of acquittal and/or a new trial on the basis the evidence is insufficient to support convictions under Counts II and III.  He moves for the dismissal of Count II on the basis it fails to state an offense.  The government resists the motion in its entirety.  (Docket 115).  The court shall address each count in turn, but first provides a summary of the relevant standards of review.

## STANDARDS OF REVIEW

### A.     Judgment of Acquittal

Fed. R. Crim. P. 29(c) gives the district court authority to set aside a guilty verdict and enter an acquittal upon a defendant's post-trial motion.  "A district court has very limited latitude in ruling upon a motion for judgment of acquittal."  United States v. Baker, 367 F.3d 790, 797 (8th Cir. 2004) (citation and internal quotation marks omitted).  "A motion for judgment of acquittal should be granted only if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt."  United States v. Boesen, 491 F.3d 852, 855 (8th Cir. 2007) (citations and internal quotation marks omitted).  This standard is very strict, and the court should not overturn a jury verdict lightly.  Id.

The district court must enter an acquittal if the evidence presented at trial is insufficient to sustain a conviction. Id. Evidence may be direct or circumstantial. Baker, 367 F.3d at 798. "Evidence supporting a conviction is sufficient if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Boesen, 491 F.3d at 856 (citation and internal quotation marks omitted). The district court must not weigh the evidence or assess the credibility of witnesses. Baker, 367 F.3d at 797; see also Boesen, 491 F.3d at 857 ("In ruling on a motion for a judgment of acquittal, the role of the court is not to weigh the evidence . . . but rather to determine whether the Government has presented evidence on each element to support a jury verdict.") (citations and internal quotation marks omitted) (ellipses in original). The district court "views the entire record in the light most favorable to the government, resolves all evidentiary conflicts accordingly, and accepts all reasonable inferences supporting the jury's verdict." Boesen, 491 F.3d at 856. In short, the court upholds the jury verdict if "drawing all reasonable inferences in favor of the verdict, there is an interpretation of the evidence that would allow a reasonable minded jury to find the defendant[] guilty beyond a reasonable doubt." Id. (citations and internal quotation marks omitted; alteration in original).

**B.    New Trial**

Fed. R. Crim. P. 33(a) gives the district court authority to vacate a judgment and grant a new trial in the interest of justice and only upon a defendant's post-trial motion. The decision to grant or deny a Rule 33 motion

"is within the sound discretion of the [district] court." United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002). The court's discretion is both broad and limited. Id. It is broad to the extent the court "can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." Id. (citation and internal quotation marks omitted). Additionally, "the court need not view the evidence most favorably to the verdict." United States v. Worman, 622 F.3d 969, 977 (8th Cir. 2010); United States v. Lacey, 219 F.3d 779, 783-84 (8th Cir. 2000) (In determining whether to grant a Rule 33 motion, "the court need not view the evidence in the light most favorable to the government, but may instead weigh the evidence and evaluate for itself the credibility of the witnesses.").

The court's discretion is limited to the extent the court must allow the jury's verdict to stand unless it determines a miscarriage of justice will occur. Id.; see also United States v. McCraney, 612 F.3d 1057, 1064 (8th Cir. 2010) ("Where a defendant moves for a new trial on the grounds that the verdict is contrary to the weight of the evidence, the district court should grant the motion if the evidence weights heavily enough against the verdict that a miscarriage of justice may have occurred.") (citation and internal quotation marks omitted); Worman, 622 F.3d at 978 ("A district court will upset a jury's finding only if it ultimately determines that a miscarriage of justice will occur."); United States v. Camacho, 555 F.3d 695, 705 (8th Cir. 2009) ("[A] new trial motion based on insufficiency of the evidence is to be granted only if the weight of the evidence is heavy enough in favor of acquittal that a guilty verdict

may have been a miscarriage of justice."). Because a motion for new trial based on the weight of the evidence is "generally disfavored," the district court should use its authority to grant a Rule 33 motion "sparingly and with caution." Campos, 306 F.3d at 579 (citations and internal quotation marks omitted).

## C.     Dismissal for Failure to State an Offense

Fed. R. Crim. P. 12(b)(3)(B) gives the district court authority to dismiss an indictment or parts thereof if it fails to state an offense. A defendant may challenge an indictment on this basis at any time while the case is pending. United States v. Jenkins-Watts, 574 F.3d 950, 968 (8th Cir. 2009); see also Fed. R. Crim. P. 12(b)(3)(B) ("[A]t any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense."). The court "may only consider the four corners of an indictment to determine whether it states an offense." United States v. Murillo, No. CR 07-2026-MWB, 2008 WL 697160 at *1 (N.D. Iowa March 13, 2008); see also United States v. Galvan, No. 8:11CR304; 2011 WL 6303249 at *1 (D. Neb. Nov. 10, 2011) (same).

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged" and, for each count, "must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1). "An indictment is legally sufficient on its face if its contains all of the essential elements of the offense charged, fairly informs the defendant of

the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." United States v. Carter, 270 F.3d 731, 736 (8th Cir. 2001). An indictment is insufficient if it fails to allege an essential element of the charged offense. Jenkins-Watts, 574 F.3d at 968. "[I]n determining whether an essential element has been omitted, a court may not insist that a particular word or phrase appear in the indictment when the element is alleged in a form which substantially states the element." Id. (citation and internal quotation marks omitted); see also United States v. Buchanan, 574 F.3d 554, 565 (8th Cir. 2009) ("An indictment need not use the precise language in the statute as long as the Indictment, 'by fair implication,' alleges an offense recognized by the law.") (citation omitted).

When a defendant challenges an indictment after jeopardy attaches,[4] the court will uphold an indictment "unless it is so defective that by no reasonable construction can it be said to charge the offense." United States v. White, 241 F.3d 1015, 1021 (8th Cir. 2001) (citation and internal quotation marks omitted); see also Carter, 270 F.3d at 736 ("An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." If a defendant challenges an indictment after jeopardy attaches, the court will

---

[4]Jeopardy attaches when the a jury is empaneled and sworn. Yeager v. United States, 557 U.S. 110, 129 S. Ct. 2360, 2372 (2009). Here, Mr. Villarreal first moved to dismiss Count II for failure to state an offense when the court settled its final jury instructions. (TT 406:12-25; 407:1-25; 408:1-25; 409:1-7).

liberally construe the indictment in favor of sufficiency.  United States v. Davis, 103 F.3d 660, 675 (8th Cir. 1996).

## DISCUSSION

### A.    Count II of the Indictment

Mr. Villarreal moves for judgment of acquittal or to dismiss Count II of the indictment, which charges the offense of aggravated sexual abuse against L.L.H., in violation of 18 U.S.C. §§ 2241(a)(1), 2246(2)(D), and 1153.  (Docket 102 at pp. 4-8).  Mr. Villarreal argues the "language of [Count II of] the indictment was materially at odds with the statute and failed to state an offense."  Id. at p. 4.  Mr. Villarreal also argues the court's final jury instructions constructively amended Count II by tracking the language of the statute, § 2241(a)(1), rather than the language of the indictment.  Id. at pp. 7-8.  Alternatively, Mr. Villarreal moves for a new trial on Count II on the same grounds.  Because the three motions implicate different standards of review, the court shall address each motion separately.

#### 1.    Motion for Judgment of Acquittal

Mr. Villarreal does not challenge the sufficiency of the evidence with respect to Count II.  Therefore, judgment of acquittal is not the proper vehicle to remedy the error alleged by Mr. Villarreal.  Accordingly, the court denies Mr. Villarreal's motion for judgment of acquittal on Count II.

#### 2.    Motion to Dismiss

In relevant part, Count II of the indictment alleged Mr. Villarreal "did knowingly engage and attempt to engage in a sexual act" with L.L.H. by using

9

force against her. (Docket 1 at pp. 1-2). The charging statute, § 2241(a)(1), penalizes a person who "knowingly causes another person to engage in a sexual act" by the use of force "or attempts to do so." 18 U.S.C. § 2241(a)(1); see also United States v. Robertson, 606 F.3d 943, 951 (8th Cir. 2010) ("A person commits aggravated sexual abuse if he knowingly causes another person to engage in a sexual act–by using force against that other person.") (citation and internal quotation marks omitted). With respect to Count II, the court instructed the jury the first essential element of the offense of aggravated sexual abuse was "[t]hat on or about March 10, 2010, Leo Villarreal knowingly caused [L.L.H.] to engage in a sexual act or attempted to do so."[5] (Docket 93 at p. 8). The issues before the court are whether Count II is legally sufficient on its face and whether the court's final jury instructions constructively amended Count II.

### a.     Whether Count II is Legally Sufficient on its Face

The challenge raised by Mr. Villarreal is a novel one and, as a result, there is a decided lack of case law on this issue. The government certainly could have avoided the issue if it carefully tracked the language of the charging statute, § 2241(a)(1). However, it appears the government in at least one other district produced a similar indictment. In United States v. Elk-Booth, the government filed an indictment alleging the defendants "knowingly engaged in a sexual act with G.W.E., and attempted to do so, by using force against

_____

[5]In its final jury instructions, the court did not include a verbatim recitation of the indictment. See Docket 93.

10

G.W.E., and aided and abetted in the aggravated sexual abuse of G.W.E., in violation of 18 U.S.C. §§ 1153(a), 2241(a)(1), and (2)." No. CR 09-13-BLG-RFC, 2011 WL 4526757 at *2 (D. Mont. Sept. 28, 2011). Although the court did not resolve the precise issue raised by Mr. Villarreal, the Elk-Booth court noted the indictment "tracked the language of the criminal statute." Id. at *3.

Clearly, this case does not resolve the issue, although perhaps it suggests a failure to state an offense argument would be unavailing. The court must inquire further. If the court limited its analysis to the plain language of § 2241(a)(1), then Mr. Villarreal's argument has merit. However, "[a]n indictment need not use the precise language in the statute as long as the Indictment, 'by fair implication,' alleges an offense recognized by the law." Buchanan, 574 F.3d at 565 (citation omitted); see also Jenkins-Watts, 574 F.3d at 968 ("[A] court may not insist that a particular word or phrase appear in the indictment when the element is alleged in a form which substantially states the element."). Thus, the court also considers the legislative history of Chapter 109A of Title 18 of the United States Code, of which § 2241(a)(1) is a part. The court believes the manner in which Congress structured Chapter 109A bears on this discussion.

> Chapter [109A] consists of eight separate sections that define and criminalize various forms of "sexual abuse" committed within the special maritime or territorial jurisdiction of the federal courts. Sexual abuse is divided into two categories: Collectively, §§ 2241–2243 prohibit abusive "Sexual Acts," while § 2244 bars abusive "Sexual Contact."
> . . . .
> Chapter 109A further subdivides abusive Sexual Acts into three distinct offense categories, specifying for each the elements the

government must prove, and where applicable, prescribing available affirmative defenses. In general, §§ 2241–2242 criminalize abusive Sexual Acts committed by threat or force, while § 2243 prohibits abusive Sexual Acts unaccompanied by any threat or force, but which are nonetheless proscribed because of the victim's status as a ward or as a minor between the ages of 12 and 16.

. . . .

By contrast, § 2243 criminalizes Sexual Acts that are somewhat less serious because they do not involve either the use of threats or force, or very young children.

United States v. Jennings, 438 F. Supp. 2d 637, 643-44 (E.D. Va. 2006) (footnote omitted). By focusing on the defendant's conduct, "Congress intended to render the defendant's state of mind immaterial." Id. at 645

The phrase "knowingly causes another person to engage in a sexual act" only appears in those statutes where the use of force, threats, or fear is an essential element. Compare 18 U.S.C. §§ 2241(a) & 2242(1) with 18 U.S.C. §§ 2242(2) & 2243. This distinction is logical because the primary manner in which a defendant causes another person to commit or engage in an act is by using force, threats, or fear. A defendant can cause another person to engage in a sexual act with the defendant or with a third person. The wording of § 2241(a)(1) encompasses both situations.

With these distinctions in mind, the court finds Count II of the indictment legally sufficient. Count II of the indictment, "by fair implication," alleges an offense recognized by § 2241(a)(1). See Buchanan, 574 F.3d at 565. Count II states an offense under § 2241(a)(1) because the facts it alleges fall within the scope of the statute as a matter of statutory interpretation. See Murillo, 2008 WL 697160 at *1 ("[A]n indictment does not state an offense if

12

the specific facts it alleges fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation.") (citation and internal quotation marks omitted). To hold otherwise would produce absurd results. See United States v. Diaz-Diaz, 135 F.3d 572, 575-76 (8th Cir. 1998) (finding the indictment was sufficient to charge the defendant with having been found in the United States in violation of 8 U.S.C. § 1326(a), although the indictment only alleged defendant entered the United States illegally, when the indictment referenced the appropriate statute and defendant necessarily had to enter the United States in order to be found in the United States); United States v. Pennington, 168 F.3d 1060, (8th Cir. 1999) (finding the indictment was sufficient and, "by fair implication," alleged an offense recognized by law when the indictment charged defendant with devising a scheme to defraud the victim of its right to the "faithful and impartial services" even though the charging statute penalizes a person for devising a "scheme to deprive another of the intangible right of honest services").

Here, the key is Mr. Villarreal's use of force to commit the sexual act against L.L.H. The court finds the indictment did not omit the element of "knowingly caus[ing] another person to engage in a sexual act" by the use of force "or attempt[ing] to do so," but rather alleged it in a substantially-similar form. Further, by including the statutory citations, the victim's name, the date and approximate location of the incident, and the definition of the sexual act alleged, the court finds Count II fairly informs Mr. Villarreal "of the charges against which he must defend, and alleges sufficient information to allow [him]

13

to plead a conviction or acquittal as a bar to a subsequent prosecution." See Carter, 270 F.3d at 736. In reaching this decision, the court liberally construes the indictment in favor of sufficiency. See Davis, 103 F.3d at 675. Count II is not so defective that, "by any reasonable construction," it failed to charge the offense for which Mr. Villarreal was convicted. See Carter, 270 F.3d at 736.

**b.      Whether the Court's Final Jury Instructions Constructively Amended Count II**

"The district court has wide discretion in crafting jury instructions." United States v. Starr, 533 F.3d 985, 996 (8th Cir. 2008) (citation and internal quotation marks omitted). When considered in totality, the instructions must "fairly and adequately instruct the jurors on the law applicable to the case. The instructions do not need to be technically perfect or even a model of clarity." Id. (citation and internal quotation marks omitted). However, if the jury instructions constructively amend the indictment, "constitutional problems may arise." Id.

"A constructive amendment occurs when the essential elements of the offense as charged in the indictment are altered in such a manner–often through the evidence presented at trial or the jury instructions–that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the indictment." Robertson, 606 F.3d at 955 (citation and internal quotation marks omitted). The court must determine whether the jury instructions "created a substantial likelihood that the defendant was

convicted of an uncharged offense."  Id. (citation and internal quotation marks omitted).

In United States v. Robertson, a District of North Dakota case, the indictment charged defendant with aggravated sexual abuse, in violation of §§ 2241(a)(1) and 1153, by alleging he "did knowingly attempt to cause F.R.S., a juvenile, to engage in a sexual act . . . by the use of force against her." (Docket 2 at p. 1 in No. 2:08-cr-00062-RRE).  In setting out the elements of aggravated sexual abuse in its final jury instructions, the court identified the first element as "the defendant knowingly attempted to engage in a sexual act with F.R.S. . . . by the use of force against her."  (Docket 50 at p. 18 in No. 2:08-cr-00062-RRE).  On appeal, the United States Court of Appeals for the Eighth Circuit found this jury instruction along with the instructions as a whole were "adequate[]," however, the issue before the Eighth Circuit was whether the district court properly instructed the jury that force was a required element of the offense of attempted aggravated sexual abuse.  Robertson, 606 F.3d at 956.

In Starr, the defendant argued the court's jury instructions created a variance and constructively amended the indictment when the instructions permitted the jury to convict him if it found he engaged in sexually explicit conduct with a minor "for the purpose of causing the production of" visual depictions of such conduct.  533 F.3d at 996.  However, the charging statute, 18 U.S.C. § 2251(a), prohibits individuals from engaging in sexually explicit conduct "for the purpose of producing any visual depiction of such conduct."

Id. The Eighth Circuit found the "language difference between 'producing' and 'causing the production of' [was] not sufficiently material" because an aider or abetter is punished equally as a principal. Id. at 997.

The court finds its instruction to the jury with respect to Count II did not constructively amend the indictment. The court finds the indictment adequately set out the elements of the offense of aggravated sexual abuse as charged in Count II. The court's final instructions fairly and adequately informed the jury of the law applicable to this case. In sum, the court denies Mr. Villarreal's motion for judgment of acquittal on Count II of the indictment.

### 3.    Motion for New Trial

Based on the same reasoning as above, the court finds Mr. Villarreal is not entitled to a new trial on Count II of the indictment. The court does not find "a miscarriage of justice" occurred. See Camacho, 555 F.3d at 705.

### B.    Count III of the Indictment

Mr. Villarreal moves for judgment of acquittal on Count III of the indictment, which charges the offense of sexual abuse against Marissa Two Lance, in violation of 18 U.S.C. §§ 2242(2), 2246(2)(C) and 1153. (Docket 102 at pp. 9-13). Mr. Villarreal argues the government failed to present sufficient evidence to prove beyond a reasonable doubt Ms. Two Lance, at the time of the alleged sexual act, was incapable of appraising the nature of the conduct or was physically incapable of declining participation in, or communicating unwillingness to engage in, the sexual act. Id. at pp.10-13. Alternatively, Mr. Villarreal moves for a new trial on Count III on the same basis. Id. at pp.

13-15.  Because the two motions implicate different standards of review, the court shall address each motion separately.

## 1.    Motion for Judgment of Acquittal

The offense of sexual abuse as charged in Count III of the indictment has four essential elements: (1) that on or about March 10, 2010, Mr. Villarreal knowingly engaged in or attempted to engage in a sexual act with Ms. Two Lance; (2) that at the time of the offense, Ms. Two Lance was incapable of appraising the nature of the conduct or was physically incapable of declining participation in or communicating unwillingness to engage in the sexual act; (3) that Mr. Villarreal is an Indian person; and (4) that the offense took place at or near Manderson, South Dakota, in Indian country.  (Docket 94 at pp. 10-11; pp. 9-10 of the instructions).[6]  Mr. Villarreal challenges the sufficiency of the evidence only with respect to the second element.

The government called Ms. Two Lance in its case-in-chief as its primary witness with respect to Count III.  The court carefully reviewed Ms. Two Lance's testimony.  On direct examination, Ms. Two Lance testified, in pertinent part, as follows:

Q.    At some point after that did you go back to sleep?

A.    Yes.

Q.    And did something awaken you?

A.    Yes.

_____

[6]In its final jury instructions, the court set out the elements the government must prove beyond a reasonable doubt in order to sustain a conviction under Count III of the indictment.  See Docket 94 at pp. 10-11; pp. 9-10 of the instructions.

Q.      What do you wake up to find?

A.      My pants and my underwear being pulled down.

Q.      Who was there?

A.      Leo.

Q.      What about his hands?  Where were his hands?

A.      They were touching my vagina and rubbing his hand, his finger back and forth.

MR. COLBATH:      I'm sorry, his head.

THE COURT:      Judy, would you read back the last answer, please?

(The pending answer was read by the reporter.)

Q.      (BY MR. KELDERMAN) What else happened with his hand?

A.      He put his finger inside my vagina.

Q.      Was he doing this -- was it one hand or both?

A.      One.

Q.      Were you fully awake?

A.      Yes.

Q.      Well, were you just coming out of sleep?

A.      Yes.

(TT 58:7-25; 59:1-4).  On cross-examination, Ms. Two Lance testified, in pertinent part, as follows:

Q.      So when you woke up the second time by somebody pulling your pants down, I assume because you had just been awake, you woke up pretty quickly.  I mean, that caused you to wake up, that feeling of your pants being down, is that true?

A.      Yes.

Q.      And again, because he was still in the room, when you went to sleep the first time you could see with the black light; you knew right away it was Leo again; he hadn't left; he was still there, is that true?

18

A.    Yes.

Q.    And you described for us yesterday how at that point he rubbed -- once your pants got down, he rubbed your vagina; then he put his fingers in you. How you can tell us about that is you were awake to see that and to feel that and to know that it was him doing that to you, weren't you?

A.    Yes.

(TT 81:12-25; 82:1-4). On redirect examination, Ms. Two Lance testified in

pertinent part as follows:

Q.    (BY MR. KELDERMAN) When you were in the bed earlier the first time during the night, there's a little confusion. Your pants were being pulled down or were pulled down and you testified yesterday that Leo's finger was in your vagina, is that right?

A.    Yes.

Q.    And so that's -- I mean, are you testifying from your memory of what happened?

A.    Yes.

(TT 97:11-19).

In its final jury instruction with respect to Count III, the court defined

sexual act as "the penetration, however slight, of the genital opening of Marissa

Two Lance by the finger, with an intent to abuse, humiliate, harass, or degrade

Marissa Two Lance or to arouse or gratify the sexual desire of the defendant."[7]

(Docket 93 at p. 10; p. 9 of the instructions). It appears from Ms. Two Lance's

testimony she clearly was awake when the sexual act, that is, the penetration

_____

[7]This definition is consistent with the language of Count III of the indictment and with 18 U.S.C. § 2246(2)(C). <u>See</u> Docket 1 at p. 2 & 18 U.S.C. § 2246(2)(C).

of her genital opening by Mr. Villarreal's finger, occurred. Ms. Two Lance was not intoxicated so as to affect her ability to ascertain the nature of the sexual act or to decline participation in, or communicate unwillingness to engage in, the sexual act. See United States v. Barrett, 937 F.2d 1346, 1348 (8th Cir. 1991) (sustaining conviction for sexual abuse and finding a reasonable jury could have found beyond a reasonable doubt the victim was physically incapable of declining participation in, or communicating unwillingness to engage in, the sexual act until after the act was complete when the testimony showed the victim was intoxicated and extremely tired, she vaguely remembered someone pulling down her jeans and underwear, once fully awake, she realized the defendant was on top of her and his penis was inside her vagina, and she immediately pushed the defendant off her and ran out of the room).

The court must inquire further, however, because Count III of the indictment also alleged Mr. Villarreal *attempted* to sexually abuse Ms. Two Lance. (Docket 1 at p. 2). The charging statute, § 2242, equally penalizes a person for engaging in a prohibited sexual act or attempting to engage in a prohibited sexual act. See 18 U.S.C. § 2242; see also United States v. White Calf, 634 F.3d 453, 457 (8th Cir. 2011) ("Attempts are criminalized equally with the substantive offense.").

"An attempt requires (1) an intent to engage in criminal conduct, and (2) conduct constituting a substantial step toward the commission of the

substantive offense which strongly corroborates the actor's criminal intent."[8] Robertson, 606 F.3d at 953 (citation and internal quotation marks omitted). "A substantial step goes beyond a mere preparation but may be less than the last act necessary before commission of the substantive crime." United States v. DeMarce, 564 F.3d 989, 998 (8th Cir. 2009). "The chief purpose of the substantial step requirement is to corroborate the actor's specific intent to commit the crime. Thus, the act must be of such an unequivocal nature that it is calculated to bring the desired result to fruition." United States v. Plenty Arrows, 946 F.2d 62, 66 (8th Cir. 1991) (citations and internal quotation marks omitted); see also United States v. Wahlstrom, 588 F.3d 538, 543 (8th Cir. 2009) ("A substantial step . . . must be necessary to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in context could conclude . . . that is was undertaken in accordance with a design to commit the substantive offense.") (citations and internal quotation marks omitted); United States v. Bauer, 626 F.3d 1004, 1008 (8th Cir. 2010) ("[A] substantial step must strongly corroborate a defendant's intent to commit the predicate offense.") (citation and internal quotation marks omitted).

### a. Intent to Engage in Criminal Conduct

To satisfy the first element of attempt, the government must prove Mr. Villarreal intended to engage in a sexual act with Ms. Two Lance while she

---

[8]In its final jury instruction with respect to Count III, the court stated "[a] person may be found guilty of an attempt if he intended to engage in a sexual act and voluntarily and intentionally carried out some act which was a substantial step toward engaging in a sexual act." (Docket 93 at p. 10; p. 9 of the instructions).

was incapable of appraising the nature of the conduct or was physically incapable of declining participation in or communicating unwillingness to engage in the sexual act.[9]  Accord Robertson, 606 F.3d at 953 (describing the intent element of attempted aggravated sexual abuse as the intent to penetrate the victim's vulva by force).  The court found no case, nor do the parties cite to any case, with facts identical or similar to the facts of this case.  However, an examination of related cases is useful.

In Plenty Arrows, the Eighth Circuit found the evidence was insufficient to sustain a conviction for attempted aggravated sexual abuse, or attempted anal sodomy, when the only evidence was the defendant placed his penis against the back of the victim's buttocks.  946 F.2d at 66.  At the time Plenty Arrows was decided, the term "sexual act" required penetration or contact with the mouth.  Id. at 64.  The Eighth Circuit found the testimony did not establish defendant's ultimate intent, that is, the evidence did not establish defendant intended to proceed beyond touching the back of the victim's buttocks to penetration, however slight, of the victim's anus.  Id. at 66.  The Eighth Circuit similarly found defendant's act was not a substantial step to the commission of attempted anal sodomy because the court could not determine from the evidence defendant's intent to commit the crime.  Id.

---

[9]Attempted sexual abuse is a specific intent crime.  United States v. Kenyon, 481 F.3d 1054, 1070 (8th Cir. 2007).  "[S]pecific intent is the intent to accomplish the precise criminal act that one is later charged with."  Robertson, 606 F.3d at 954 (citation and internal quotation marks and brackets omitted).

In Kenyon, the Eighth Circuit upheld a conviction for attempted sexual abuse when the evidence showed defendant, while naked and aroused, took off the victim's clothes, moved up and down on top of the victim for five or ten minutes, and unsuccessfully tried to put his penis into the victim's vagina. 481 F.3d at 1067-68. Although the evidence was insufficient to prove actual penetration, the Eighth Circuit found the evidence sufficient for the jury to find defendant intended to sexually abuse the victim and took a substantial step to do so. Id. at 1068.

In United States v. Hollow Horn, the Eighth Circuit upheld a conviction for abusive sexual contact by virtue of attempt. 523 F.3d 882, 891 (8th Cir. 2008). The Eighth Circuit found the testimony did not establish defendant intentionally touched the victim's genitalia, anus, groin, or inner thigh as charged in the indictment, but was sufficient to prove defendant attempted to commit abusive sexual contact. Id. The Eighth Circuit found defendant's acts of rubbing the victim's breasts, lifting her nightgown, and trying to remove her shorts supported "both the sexual nature of the act and that [the defendant] took a substantial step toward commission of the crime." Id.

In DeMarce, the Eighth Circuit upheld the denial of defendant's motion for judgment of acquittal on convictions for attempted aggravated sexual abuse and attempted sexual abuse of a minor, finding defendant's actions of pushing the victim on the back seat of his truck, placing his hands on the victim's stomach and legs, twice pulling down the victim's shorts and underwear, and later admitting to law enforcement he tried to rape the victim were sufficient to

demonstrate both defendant's intent to engage in a sexual act with the victim and his commission of a substantial step. 564 F.3d at 998-99.

In United States v. Wright, the Eighth Circuit upheld a conviction for attempted aggravated sexual abuse and the denial of defendant's motion for judgment of acquittal. 540 F.3d 833, 839-41 (8th Cir. 2008). The Eighth Circuit found defendant's statements he "tried to do things" with the victim and "it got close" along with defendant's acts of trying to pull down the victim's pants, covering her mouth with his hand after she shouted for help, and stopping only when another person came into the room were sufficient to demonstrate beyond a reasonable doubt defendant's intent to "proceed beyond his actions to intentionally touching [the victim's] genitalia not through the clothing, with an intent to abuse her or arouse someone." Id. The Eighth Circuit also found defendant's acts constituted a substantial step toward the commission of attempted aggravated sexual abuse. Id.

Unlike the defendants in the above cases, Mr. Villarreal completed the sexual act charged in the indictment, that is, the penetration, however slight, of the genital opening by the finger, with the intent to abuse, humiliate, harass, or degrade Ms. Two Lance or to arouse or gratify the sexual desire of Mr. Villarreal. See Docket 1 at p. 1. Ms. Two Lance testified Mr. Villarreal penetrated her vagina with his finger. (TT 58:22-25). Clearly, Mr. Villarreal had the intent to perpetrate the sexual act charged because he completed that act. However, the act occurred when Ms. Two Lance was awake. The key question is whether the evidence sufficiently demonstrated Mr. Villarreal's

*intent* to commit the act while Ms. Two Lance was asleep, although the actual penetration occurred when Ms. Two Lance was awake.

The court finds Mr. Villarreal's act of pulling down Ms. Two Lance's pants and underwear while she was asleep was sufficient evidence of his intent to commit the sexual act while she was asleep. It just happened she woke up, and the sexual act occurred almost immediately thereafter. A reasonable jury viewing the evidence could find beyond a reasonable doubt the pulling down of Ms. Two Lance's pants and underwear by Mr. Villarreal while she was asleep followed by the swift completion of the sexual act demonstrated Mr. Villarreal's intent to sexually abuse Ms. Two Lance while she was asleep, that is, while she was incapable of appraising the nature of the conduct or was physically incapable of declining participation in or communicating unwillingness to engage in the sexual act.

### b. Substantial Step

The court must also determine whether the act of pulling down Ms. Two Lance's pants and underwear by Mr. Villarreal while she was asleep was a substantial step toward the commission of sexual abuse as charged in Count III. In making this determination, the court must consider the particular facts of the case. See United States v. Crowley, 318 F.3d 401, 408 (2d Cir. 2003) ("Determining whether particular conduct constitutes a substantial step is so dependent on the particular factual context of each case that, of necessity, there can be no litmus test to guide the reviewing courts.") (citation and internal quotation marks omitted); see also United States v. Mazzella, 768 F.2d

25

235, 240 (8th Cir. 1985) ("[T]he determination whether a defendant's conduct amounts to a 'substantial step' is necessarily dependent on the particular factual circumstances in the case at hand.").  Given the particular circumstances of this case, a reasonable jury viewing the evidence could find beyond a reasonable doubt the pulling down of Ms. Two Lance's pants and underwear by Mr. Villarreal while she was asleep went beyond mere preparation and was of such "an unequivocal nature that it [was] calculated to bring the desired result to fruition."  See Plenty Arrows, 946 F.2d at 66.

The sequence of events is particularly important to this determination. Ms. Two Lance testified she was awakened by the pulling down of her pants and underwear by Mr. Villarreal.  (TT 58:9-12).  Ms. Two Lance testified Mr. Villarreal then touched her vagina, rubbed his finger back and forth, and put his finger inside her vagina.  (TT 58:15-25).  A reasonable inference from Ms. Two Lance's testimony is this sequence of acts progressed quickly.  Given the nature of the sexual act alleged, that is, the digital penetration of Ms. Two Lance's vagina, all that is needed to accomplish the act is to pull down Ms. Two Lance's pants and underwear.  According to Ms. Two Lance, Mr. Villarreal did so and he did so while she was asleep.  Indeed, there is no further act Mr. Villarreal could have performed toward the goal of digital penetration, "short of actual completion of the [substantive offense,]" which ultimately occurred in this case.  See Robertson, 606 F.3d at 953.  Perhaps in another case where, for example, the sexual act alleged was penile penetration, the pulling down of the victim's pants and underwear, without more, would be

26

mere preparation, but that is not the case here. *Cf.* United States v. Blue Bird, 372 F.3d 989, 993-94 (8th Cir. 2004), *overruled in part on other grounds by* United States v. Pirani, 406 F.3d 545, 555 (8th Cir. 2005) (in ruling on the admissibility of evidence, the Eighth Circuit noted courts generally have held "that mere solicitation and fully clothed but sexually suggestive acts are insufficient to constitute attempted 'sexual acts' or statutory rape" and suggested the attempted removal of defendant's pants and passing out on top of the victim "could constitute evidence of an attempted sexual act or attempted sexual contact").

In sum, the court finds the jury's verdict of guilt with respect to Count III of the indictment must be upheld in light of the standard governing a motion for judgment of acquittal. The court finds "there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt." See DeMarce, 564 F.3d at 998. The testimony of Ms. Two Lance was sufficient to sustain a conviction for sexual abuse, by virtue of attempt, as alleged in Count III of the indictment. Accord Kenyon, 481 F.3d at 1068 (noting the fact there was insufficient evidence to prove actual penetration did not preclude a conviction because the court "presume[s] that the jury reached its verdict based on the alternative theory of attempt, for which the evidence was sufficient"); United States v. Dreamer, 88 F.3d 655, 658 (8th Cir. 1996) ("When the district court submits to the jury two or more grounds for conviction, for one of which there was insufficient evidence, and it is impossible to tell on what grounds the jury decided the defendant's guilt, we

cannot reverse the jury's general verdict of guilty. As long as there is sufficient evidence to support at least one of the grounds for conviction, we must affirm the jury's general verdict.") (internal citations omitted). The court denies Mr. Villarreal's motion for judgment of acquittal on Count III.

## 2. Motion for New Trial

Based on the same reasoning as above, the court finds Mr. Villarreal is not entitled to a new trial on Count III of the indictment. The court does not find "the weight of the evidence is heavy enough in favor of acquittal that a guilty verdict may have been a miscarriage of justice." See Camacho, 555 F.3d at 705. In making its determination, the court weighed the evidence and assessed the credibility of the witnesses. See Lacey, 219 F.3d at 783-84. In particular, the court finds Ms. Two Lance's testimony reasonably consistent and credible with respect to the events surrounding the first sexual act between her and Mr. Villarreal, that is, the sexual act alleged in Count III.[10]

## CONCLUSION

In accord with the above discussion, it is hereby

ORDERED that Mr. Villarreal's motion for judgment of acquittal or, in

---

[10]During trial preparation, Ms. Two Lance for the first time revealed a second alleged sexual act, an alleged forcible rape, involving Mr. Villarreal, which she described at trial. (TT 89:19-21;94:10-12; 95:8-11). Ms. Two Lance explained she did not inform law enforcement of the second incident earlier because she was embarrassed and scared. (TT 82:20-23).

the alternative, for a new trial on Counts II and III of the indictment and for dismissal of Count II of the indictment (Docket 101) is denied.

Dated March 2, 2012.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE